UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ALEXANDER DOMINIC HOLCOMB,      )
                                )      6: 11-cv-01092-JO
          Petitioner,           )
                                )
     v.                         )
                                )      OPINION AND ORDER
ATTORNEY GENERAL OF THE STATE   )
OF OREGON,                      )
                                )
          Respondent.           )

     Anthony D. Bornstein
     Office of the Federal Public Defender
     101 SW Main Street, 1700
     Portland, Oregon  97204

          Attorney for Petitioner

     Ellen F. Rosenblum
     Attorney General
     Kristen E. Boyd
     Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, Oregon 97301

          Attorneys for Respondent

1 - OPINION AND ORDER

JONES, District Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges his convictions and sentence for rape, unlawful sexual penetration, sexual abuse, assault and burglary. For the reasons set forth below, the Petition for Writ of Habeas Corpus [3] is denied, and Judgment is entered dismissing this action with prejudice.

<strong><u>BACKGROUND</u></strong>

On November 20, 2002, the Washington County Grand Jury returned an indictment charging petitioner with one count of Rape in the First Degree, two counts of Unlawful Sexual Penetration in the First Degree, two counts of Sexual Abuse in the First Degree, one count of Felony Assault in the Fourth Degree and six counts of Burglary in the First Degree. Respondent's Exhibit 102. Following a bench trial, petitioner was found not guilty on one count of unlawful sexual penetration, one count of sexual abuse and two counts of burglary and was convicted on one count of Rape in the First Degree, one count of Unlawful Sexual Penetration in the First Degree, one count of Sexual Abuse in the First Degree, one count of Felony Assault in the Fourth Degree and two counts of Burglary in the First Degree.[1] The court imposed concurrent sentences totaling 100 months. Respondent's Exhibit 101.

---

[1] On the State's motion, two counts of Burglary in the First Degree were dismissed at trial.

2 - OPINION AND ORDER

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed the trial court without written opinion, and the Oregon Supreme Court denied review. *State v. Holcomb*, 202 Or. App. 327 (2005) *rev. denied*, 339 Or. 701 (2005); Respondent's Exhibits 106-110.

Petitioner filed for post-conviction relief ("PCR") in state court. The PCR trial court granted relief on petitioner's Second Amended Petition for Post-Conviction Relief. *Holcomb v. Hill*, Malheur County Circuit Court Case No. 06024970M; Respondent's Exhibit 139. On appeal, the Oregon Court of Appeals reversed the PCR court in a written opinion, and the Oregon Supreme Court denied review. *Holcomb v. Hill*, 235 Or. App. 419 (2010), *rev. denied*, 349 Or. 370 (2010); Respondent's Exhibits 140-148.

On September 9, 2011, petitioner filed this action. In his Petition for Writ of Habeas Corpus, he raises the following grounds for relief:

> <u>Ground One</u>: Trial counsel failed to investigate and effectively litigate a motion to suppress petitioner's pre-arrest statements to Abby Lairson during pretext telephone conversations made under the direction of and recorded by Beaverton Police Department officers on grounds that petitioner's statement[s] were not voluntary and were obtained in violation of his rights to counsel and against self incrimination under Article I, sections 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution along with trial counsel['s] failure to inform petitioner about his right at trial to have the jury determine the voluntariness of his pretrial statements made during taped pretext telephone conversations with Abby Lairson made under the direction of and recorded by Beaverton Police Department officers, which failure influenced petitioner's decision to waive a jury trial

3 - OPINION AND ORDER

and during the pretrial hearing and trial, and without strategic justification, trial counsel stipulated to the admission of the tape recorded pretext telephone conversations between petitioner and Lairson without objection or present evidence to rebut or to mitigate the prejudicial impact of the tape recorded pretext telephone conversations between petitioner and Lairson all which accumulate in counsel's failure to challenge the tape recorded conversation.

<u>Supporting Facts</u>: On morning of November 8th and afternoon of the 12th, Lairson made telephone calls to Petitioner, with the help of the Beaverton Police Department. Evening of the 8th Petitioner went to Lairson's apartment to discuss the phone call. Lairson informed Petitioner that the <u>police w[]ere not involved and that she did not call the police.</u> (Holcomb Depo. Pg 61). She stated that she wanted me to admit to raping her and we would be able to have the possibility of resuming a relationship. Petitioner['s] will was overborne when she made an <u>implied</u> promise of immunity. Subsequently, incriminating statements w[]ere made on the November 12th phone call.

Trial counsel was informed that there was a conversation that effected the statements made on the telephone (Trial counsel's notes). Trial counsel never inquired farther into the issue. Trial counsel claim[s] that there was some form of communications about this but could not remember specifics. (Trial Depo.) Trial counsel never submitted a motion on voluntariness. Never informed Petitioner properly about his right to jury trial when he failed to inform Petitioner that he could submit the admissibility factor of the voluntariness of the telephone call to the court and then resubmit the issue of voluntariness to the jury for consideration, which seriously impacted Petitioner's jury waiver; specifically related to trial counsel informing Petitioner that there was no way of suppressing the tape[d] phone calls. (Holcomb's Depo.) Never raised nor presented rebuttal evidence during pretrial voluntariness/Miranda hearing; that the state requested; on the voluntariness of the phone conversation. Stipulated to the admission of the telephone conversation without informing Petitioner about the stipulation and then not objecting to the stipulation when it was raised in the court.

<u>Ground Two</u>: Trial counsel failed to investigate and effectively litigate a motion to suppress petitioner's pre-arrest statements to Beaverton Police Department detectives on grounds that petitioner's statements were not voluntary and were obtained in violation of his rights to counsel and

against self incrimination under Article I, Sections 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, congruently during the pre-trial hearing and trial, and without strategic justification, trial counsel failed to present evidence to rebut or to mitigate the impact of prejudicial evidence and/or testimony about petitioner's statements to police detectives all which accumulate in counsel['s] failure to adequately litigate a suppression motion with respect to statements that petitioner made to police.

Supporting Facts:   On November 14th Petitioner went to Lairson's Apartment again to discuss the status of their relationship and specifically on the part of Petitioner to recant the previous statements he made on the 12th.   Lairson did not want to talk and went to call police.   Approximately 7 officers [were] dispatched to the apartment.   They stop[ped] him inside the alcove outside of Lairson's apartment.   They put preliminary questions to Petitioner and confiscated Petitioner's drivers license.   Then they informed Petitioner that he was to remain there until the detective talked to him. A couple of minutes later two detectives arrived.   The officer who confiscated Petitioner's license handed it to the detective.   The officers nor the detective inform[ed him] that he could freely leave.   The detective started to interrogate Petitioner.   Almost 30 minutes later Petitioner was put under formal arrest.   The detective informed Petitioner of his rights and Petitioner invoked those rights and did not speak to them since.

Trial counsel never investigated the circumstances surrounding the statements made to the detective.   Nor did trial counsel put a motion to suppress the statements that Petitioner made to the detective.   Trial counsel never called Petitioner to testify at the pre-trial hearing about the situation.   All which effect Petitioner's right to testify.

Ground Three:   Trial counsel failed to conduct a thorough investigation of the facts and circumstances of the allegations against petitioner, interview potential witnesses and develop favorable evidence including, but not limited to witnesses who could refute the state's evidence that petitioner caused injuries in the course of using physical force to overcome Abby Lairson's resistance to engaging in sexual acts with petitioner, including, but not limited to: Evelyn Kim, M.D., the physician who examined Abby Lairson at the hospital on November 2, 2002, and noted abrasions to both sides of her face to contradict Lairson's testimony that

5 - OPINION AND ORDER

petitioner hit her in the face only one time; and, Chris
Katzman, now known as Qrys Thorton, Abby Lairson's former
boyfriend, with whom she reported having sex the day after the
alleged rape, regarding his observations of Abby Lairson's
physical condition, her lack of complaint of physical injuries
during their sexual encounter, engaging in rough,
sadomasochistic sex and her out spoken and controlling
behaviors.   Along with offering alternative grounds for
admissibility of the evidence that Abby Lairson had sexual
relations with Chris Katzman the day after she alleged that
she was raped by petitioner, (Tr. 6), including, but not
limited to the grounds that the evidence was admissible to
rebut Lairson['s] testimony about the origin and extent of the
injuries petitioner inflicted, or that the state opened the
door to this evidence in the direct testimony of Misty Shurwon
about when Lairson told her about the alleged rape and
conflicting statements of where the injuries appeared, Tr 124-
25 and/or during the direct testimony of its expert, Therese
Polak that Lairson's delay in reporting rape was not
inconsistent with the occurrence of a sexual assault, Tr 106-
08 and renew the attempt to offer evidence that Abby Lairson
had sexual relations with Chris Katzman the day after she
alleged that she was raped by petitioner after Lairson
testified in the state's case that, after she was raped, her
vagina hurt or when the state introduce[d] the results of the
rape examination, to [illicit] testimony form the expert
witness about whether the findings of her rape examination
would be tainted by Lairson having sex with someone else after
the alleged rape.  Which accumulated in counsel['s] failure to
adequately investigate and litigate an OEC 412 issue
concerning whether evidence of the victim's subsequent sexual
activity with another person should have been admitted, in
violation of 5th, 6th and 14th amendments of the United States
Constitution.

Supporting Facts:   Lairson claimed she was injured in her
right jaw.   The location of the injuries was on the upper
dental line.  Evelyn Kim, M.D. was the supervising doctor when
Lairson got her exam.   In her exam she state[d] there was no
significant injuries to being punch[ed] and no vaginal trauma.
In the police report and medical report Lairson state[d] that
she had sex with someone the day after the alleged incident.
Qrys Thornton state[d] he did not see, nor hear Lairson
complain of any injuries.  Also that it was uncharacteristic
of her not to complain.

Ground Four:  Post-conviction appeal counsel failed to raise
the issues that Petitioner wanted to preserve.  Also with the

Court of Appeals failure to allow Petitioner to preserve all his issues by limiting him to 5 pages and no access to the oral arguments.   In violation of the 6th amendment.

<u>Supporting Facts</u>:  Petitioner was and is in disagreement with his Post-conviction appeal counsel about what issues to raise. Counsel state[s] that petitioner was allow[ed] to submit a supplemental brief.   Petitioner informed counsel that the limit of 5 pages was not enough and that he wanted to be present at oral argument.  A motion was submitted to the court regarding these issues.   Counsel informed Petitioner that I would need to submit the 5 pages if I wanted to preserve any issues.   Petitioner state[d] in his limited brief that there was not enough pages to submit all the claims that [he] was wanting to be preserved.   The courts never made an inquiry into what other issues that w[ere] not being presented to the court. Oral argument was set but Petitioner was never allowed to attend.

Respondent asks the Court to deny relief on the Petition because:  (1) Grounds Two and Four are procedurally defaulted and the default is not excused; (2) Grounds One and Three were denied in a state court decision entitled to deference; and (3) all claims are without merit.

**DISCUSSION**

I.   **Unargued Claims**

Petitioner fails to brief the merits of Grounds Two and Four in his counseled supporting memorandum.   The State contends that while petitioner presented a claim of ineffective assistance of counsel for failing to investigate and effectively litigate a motion to suppress petitioner's pre-arrest statements to police (Ground Two claim) to the post-conviction trial court and on appeal to the Oregon Court of Appeals, he failed to present it in either his counseled or *pro se* petition for review to the Oregon Supreme

Court and it is therefore procedurally defaulted.  With regard to Ground Four, the State contends:  (1) that petitioner failed to fairly present this claim to the Oregon courts in a procedural context in which its merit would be considered; and (2) that any claim of error pertaining to the state post-conviction appellate review process or claim of ineffective assistance of post-conviction appellate counsel is not cognizable in this federal habeas corpus proceeding.  Response [42] at pp. 10-11.

On federal habeas review, petitioner must show that the state court determination denying his claims was contrary to or an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).  The Court's review of the record reveals that petitioner failed to fairly present his Grounds Two and Four claims to the Oregon courts in a procedural context in which their merits would be considered.  Moreover, petitioner's post-conviction appellate counsel's alleged ineffectiveness does not provide a legal basis for excusing the procedural default of the underlying ineffective assistance of trial counsel claim.  *See Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012) ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.").  Accordingly, by not advancing Grounds Two and Four in his

8 - OPINION AND ORDER

memorandum, petitioner has failed to meet the burden of proof for habeas relief under § 2254(d) and relief on these claims must be denied.

## II. **Merits**

### A. **Standards**.

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court

9 - OPINION AND ORDER

may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.   The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.* at 410.   The state court's application of clearly established law must be objectively unreasonable.   *Id.* at 409.   A federal habeas court reviews the state court's "last reasoned decision." *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel.   First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984).   Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense.   The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial.   *Id* at 696.

10 - OPINION AND ORDER

When considering ineffective assistance of counsel claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)(per curium). Moreover, where a state court has adjudicated an ineffective assistance of counsel claim on the merits, a habeas court's review of a claim under the *Strickland* standard is "doubly" deferential. *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

B.    **Analysis**.

**Ground One: Ineffective Assistance of Trial Counsel for Failing to Seek Exclusion, on Involuntariness Grounds, of Petitioner's Statements to the Victim During Telephone Conversations Recorded by Police**

According to petitioner, the Oregon Court of Appeals misapplied federal law when it determined that his incriminating statements made during recorded phone calls with the victim were voluntary. Petitioner contends that the victim, acting as a police agent, made both an implied promise and an emotional threat such that petitioner's will was overborne when he made the subject self incriminating statements. Brief in Support [56] at pp. 8-12.

In a written opinion denying petitioner's ineffective assistance claim, the Oregon Court of Appeals held that "[i]n this case, petitioner failed to establish that any threat or promise

induced him to make the statements that he made to the victim during the recorded telephone calls," and therefore, counsel was not ineffective for failing to move to have these statements suppressed.  Respondent's Exhibit 144, p. 15.  In analyzing the question, that court noted:

> We first turn to the question of whether counsel's failure to challenge the admission of the recorded telephone calls between petitioner and the victim fell below an objective standard of reasonableness. Petitioner asserted, and the post-conviction court implicitly agreed, that counsel should have litigated-- and litigated successfully--a motion to suppress those recordings on the ground that the victim, acting as an agent for the police, obtained the admissions contained in those recordings by making an implied promise, which rendered the admissions involuntary as a matter of law. *See State v. Goree*, 151 Or App 621, 631, 950 P2d 919 (1997), *rev den*, 327 Or 123 (1998), ("A confession or admission that was obtained by a promise of immunity or leniency on the same charge is involuntary as a matter of law." *Citing State v. Ely*, 237 Or 329, 334, 390 P2d 348 (1964)).  Petitioner contends that the promise need not proffer immunity or leniency, but merely must have produced the admission.  In particular, petitioner points to the statement in *Ely* that "the state has the burden of showing that [an admission] was voluntarily made, without the inducement of fear or hope." *Id.* at 332.  Petitioner argues that, because there was evidence that he made the admissions in the hope of resuming a sexual relationship with the victim, the admissions were involuntary as a matter of law under *Ely* and its progeny.
>
> The difficulty with petitioner's argument is that the case law does not support the premise that an admission made based on hope, in the absence of a promise of leniency or immunity, renders an admission involuntary as a matter of law.  *See, e.g., State v. Hoehne*, 163 Or App 402, 407, 989 P2d 469 (1999), *rev den*, 330 or. 252 (2000)(incriminating statements made in response to suggestion that probationer should become a police informant were not involuntary as a matter of law); *Goree*, 151 Or App at 632-33 (statements made in response

12 - OPINION AND ORDER

> to promise concerning leniency on one charge did not
> render statements concerning other crimes involuntary);
> *State v. Pollard*, 132 Or App 538, 548, 888 P2d 1054, rev
> den, 321 Or 138 (1995)(promise of treatment that induced
> confession was involuntary as a matter of law because
> promise implied that treatment was an alternative to
> taking the case before the grand jury).  As the court
> stated in *State v. Smith*, 301 Or 681, 693, 725 P2d 894
> (1986), "the key to the 'free and voluntary' character of
> the confession is in the inducement made to the
> defendant--was there any promise or threat made to the
> defendant which would elicit a false confession[.]"

*Id*. at 14-15.

In this federal habeas proceeding, petitioner maintains that the victim played on his sympathies during the recorded calls by referencing her young child.  Brief in Support [56] at 8. He further contends that she explicitly sought admissions from him that he had raped her and told him that she wanted an apology from him for raping her. *Id*. at 8-9.  According to petitioner, "[t]he implicit threat, contained in these calls, was that [he] would never again see [the victim] or her son, to whom he had become a father and had become a son to him." *Id*.  According to petitioner, that eventuality was to be avoided at all costs, and thus, the state obtained crucial prosecutorial evidence through what amounted to "emotional blackmail." *Id*. at 9 (citing Respondent's Exhibit 112 at 70).

To be admissible, a confession must be "free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however, slight,

13 - OPINION AND ORDER

nor by the exertion of any improper influence." *See Brady v. United States*, 397 U.S. 742, 753 (1970)(citation omitted). A court on direct review is required to determine, in light of the totality of the circumstances, "whether a confession [was] made freely, voluntarily and without compulsion or inducement of any sort." *See Withrow v. Williams*, 507 U.S. 680, 689 (1993)(internal quotation marks and citation omitted).

In cases involving psychological coercion, the question is whether, in light of the totality of the circumstances, the defendant's will was overborne when he or she confessed. *See Ortiz v. Uribe*, 671 F.3d 863, 869 (9th Cir. 2011). The interrogation techniques of the officer must shock the conscience so as to warrant a federal intrusion into the criminal processes of the States. *See Moran v. Burbine*, 475 U.S. 412, 433-34 (1986). Coercive police activity is a necessary predicate to finding that a confession is involuntary within the meaning of the Due Process Clause, and the state of mind of the police is irrelevant when making this determination. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Moran*, 475 U.S. at 423. However, police deception alone does not render a confession involuntary. *See United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993).

Here, even assuming that the victim was acting as an agent of law enforcement throughout the phone conversations, the totality of the circumstances indicate that petitioner's will was not overborne

14 - OPINION AND ORDER

when he made his incriminating statements.  There is simply no indication of a promise or threat from the victim made in exchange for his admissions.  To be sure, petitioner expresses his desire to have a relationship with her and her son again.  However, those sentiments come from him and not from any implied promise or threat by the victim.  *See* Respondent's Exhibit 114, pp. 112-33.  As the Oregon Court of Appeals found, the fact that petitioner may have held out hope that by coming clean with what he had done and apologizing to the victim, he might be able to salvage his relationship with the her and her son, does not support a conclusion that his will was overborne when he made his statements.

Notably, in *Hopkins v. Cockrell*, 325 F.3d 579 (5th Cir. 2003), a case petitioner characterizes as "highly relevant," the court found that portions of the petitioner's confession there were involuntary:

> It is clear from the context of the confession itself and its surrounding circumstances that Knott's [a detective and acquaintance of the petitioner] conduct went beyond mere emotionalism, trickery or confusion and passed the line into the sort of lying that deprives a defendant "of the knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Moran v. Burbine*, 475 U.S. 412, 424, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).  During the first taped confession, Knott assured Hopkins that their conversation was confidential telling Hopkins, "This is for me and you.  This is for me.  Okay.  This ain't for nobody else."  This assurance came after Hopkins indicated to Knott that he didn't want to talk too loudly for fear that the officers outside of the room might hear them discussing the murder.  Knott also reassured Hopkins throughout the confession that they were "friends" and that he just wanted to know the truth.  During the

15 - OPINION AND ORDER

interview, Knott also assured Hopkins that he would not tell Hopkins' mother about details of the murder or Hopkins' confession. After obtaining the confession from Hopkins, however, Knott informed Hopkins that if he was subpoenaed, he would have to tell the truth about their conversation because Knott's family depended on him to bring home a paycheck.

These comments as well as the circumstances under which Hopkins was interviewed, i.e., after being in isolation for fifteen days, being interviewed eight previous times, being interviewed a ninth time by someone Hopkins considered a "close friend," leads to a very *Spano*-like situation. The totality of the circumstances, especially in light of Knott's comments to Hopkins that their conversation was confidential, leads this Court to believe that portions of the Hopkins' admitted confession were indeed involuntary. An officer cannot read the defendant his *Miranda* warnings and then turn around and tell him that despite those warnings, what the defendant tells the officer will be confidential and still use the resultant confession against the defendant. Yet Knott and the prosecution did exactly that.

*Id.* at 584-85 (citation omitted).

Petitioner's arguments notwithstanding, *Hopkins* actually underscores the voluntariness of petitioner's statements to the victim here. First, in stark contrast to the facts in *Hopkins*, the victim here did not make any false representations to petitioner indicating that their conversations would be held in confidence, nor did she imply that if he admitted to raping her that they could get back together. Moreover, unlike the petitioner in *Hopkins*, petitioner was on his cell phone and free in the community at the time he made the subject statements. He was not subject to any of the stresses associated with being held in isolation for fifteen days and being repeatedly interviewed by law enforcement. Finally,

16 - OPINION AND ORDER

even assuming that the victim employed a degree of emotionalism to draw out petitioner's confession here, *Hopkins* makes clear that "mere emotionalism" alone will not invalidate a confession. *Id.* at 584 (citing *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992)).

Accordingly, a fair review of the record, including a careful review of all of the telephone recordings, leads only to the conclusion that the Oregon Court of Appeals' finding that petitioner's statements were voluntary was neither contrary to nor an unreasonable application of, clearly established federal law as announced by the Supreme Court nor was it based on an unreasonable determination of the facts. As such, petitioner cannot demonstrate that the Court of Appeals' attendant determination that counsel did not render constitutionally deficient assistance when he failed to challenge the admissibility of these statements, was contrary to, or involved an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).[2]

### Ground Three:  Ineffective Assistance of Trial Counsel for Failing to Adequately Pursue Admission at Trial of Evidence Concerning the Victim's Consensual Sexual Encounter with a Third Party the Day After the Rape

Petitioner contends that his trial counsel rendered constitutionally ineffective assistance when he failed to renew a motion to have evidence of the victim's sexual encounter with her

---

[2]  For the reasons set out above, the Court would deny relief on this claim even on *de novo* review.

former boyfriend Chris Katzman on the day after the rape admitted at trial. Petitioner argues this evidence would have been admissible: (1) to rebut evidence concerning the victim's physical/medical condition following the rape; (2) to impeach the victim's testimony concerning her penchant for rough sado-masochistic sex; and (3) to generally impeach the victim's veracity. Petitioner maintains his counsel's failure in this regard prejudiced him because Katzman's testimony would have supported "'an inference that [the victim's] sexual contact with [petitioner] had been consensual and not traumatic, and that she did not suffer the injuries she claimed.'" Brief in Support [56] at 17-18 (quoting Respondent's Exhibit 145 at 9). According to petitioner, the victim's "credibility was so essential to the trial, there is a reasonable likelihood that had counsel found and sought the admission of this evidence, the verdict of the criminal trial would have been very different." *Id.* at 19.

In response, the State insists that the Oregon Court of Appeals' determination that petitioner was not prejudiced by any failure on counsel's part because none of Katzman's testimony would have been admissible under then existing Oregon law is entitled to deference. Moreover, the State argues that the underlying evidentiary question whether Katzman's testimony would have been admissible is one of state law and not reviewable in this federal habeas corpus proceeding.

18 - OPINION AND ORDER

The Due Process Clause guarantees a criminal defendant "the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). However, the right is not unfettered. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).    States have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.    *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). "While the Constitution ... prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of issues, or potential to mislead the jury." *Id.* at 326.    Moreover, "the Sixth Amendment right to present relevant testimony 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'"    *Lajoie v. Thompson*, 217 F.3d 663, 668 (9th Cir. 2000)(quoting *Michigan v. Lucas*, 500 U.S. 145, 149 (1991)).    The policies embedded in Oregon's Rape Shield statute represent such a legitimate interest.

Here, even assuming, as the Oregon Court of Appeals found, that counsel rendered deficient performance when he failed to renew his motion, petitioner cannot meet his burden of demonstrating that the court's determination, that he was not prejudiced by counsel's

19 - OPINION AND ORDER

failure because none of the potential evidence would have been admissible under Oregon law at the time of trial, was contrary to or unreasonable application of *Strickland*.

The Oregon Court of Appeals found that counsel provided inadequate assistance when he failed to interview Katzman to determine whether "evidence concerning the victim's sexual encounter with Katzman was admissible to rebut the evidence from the hospital examination conducted two days after the rape and one day after the sexual encounter with Katzman." Respondent's Exhibit 144 at 23 (citing OEC 412(2)(b)(B)(other evidence of past sexual behavior is precluded unless its admission "[i]s necessary to rebut or explain scientific or medical evidence offered by the state")).

Nevertheless, that court ultimately held that petitioner was not prejudiced by counsel's failure because: (1) the challenged evidence would not have shown that the victim lacked injuries consistent with her version of events, and therefore, it was not admissible under OEC 412(2)(b)(B); and (2) pursuant to controlling Oregon law, the evidence was not admissible to show it was unlikely that the victim would have engaged in consensual sex with anyone the day after being raped. Respondent's Exhibit 144 at 24 (citing *State v. Beeler*, 166 Or. App. 275, 999 P.2d 497, *rev den*, 331 Or. 244 (2000)(evidence that a victim engaged in consensual intercourse one day after a rape was inadmissible)).

Accordingly, a fair review of the record, including the Oregon Court of Appeals' reasoned 25-page opinion denying relief on petitioner's claims, leads only to the conclusion that that court reasonably applied *Strickland*'s prejudice prong when it determined that petitioner had failed to establish that he was prejudiced by counsel's failure to renew his motion to introduce evidence related to the victim's encounter with Katzman.   Moreover, in view of the Court's conclusion above, *i.e.*, that the Oregon Court of Appeals' determination, that petitioner's admissions in the recorded calls with the victim were voluntary, was neither contrary to nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts; any attempt to show prejudice based on an argument that the sex between petitioner and the victim was consensual would fail.[3]   As the trial judge stated at petitioner's sentencing:

> I felt based upon the evidence that I heard and saw, there was absolutely convincing evidence to me.  I mean, beyond a reasonable doubt that you were guilty of these

---

[3]   In both listening to the subject recordings and carefully reviewing the transcripts of these recordings, it is evident to the Court that there was no confusion on petitioner's part that what he did to the victim was wholly unrelated to any consensual sado-masochistic sexual role playing.  Not once in the recordings does petitioner suggest otherwise.   To the contrary, he repeatedly admits that what he did was wrong, and states, among other things, that he did it out of frustration and because he was freaked out, the victim drove him crazy, he lost control, he lost his sanity and he felt teased by the victim.   *See* Respondent's Exhibit 114, pp. 112-33.

crimes.  **The telephone conversation in and of itself was sufficient.**

Respondent's Exhibit 105 at 11 (emphasis added).

**CONCLUSION**

For these reasons, the Petition for Writ of Habeas Corpus [3] is DENIED, and this case is DISMISSED, with prejudice.  In addition, the Court finds that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).  Accordingly, this case is not appropriate for appellate review.

IT IS SO ORDERED.

DATED this ___11th___ day of October, 2013.

_____
Robert E. Jones
United States District Judge

22 - OPINION AND ORDER